IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

REYNA ESPEJO, et al.,          )
                               )
        Plaintiffs,            )
                               )
            v.                 )        1:09cv1295 (JCC)
                               )
GEORGE MASON MORTGAGE, LLC,    )
        et al.,                )
                               )
        Defendants.            )
                               )


**A M E N D E D   M E M O R A N D U M   O P I N I O N**[1]

        This matter is before the Court on Defendant George

Mason Mortgage, LLC ("George Mason Mortgage") and Defendant

Bierman, Geesing, Ward, LLC's ("BGW") separate Motions to Dismiss

Plaintiffs Reyna Espejo and Ovidio Velis's (collectively

"Plaintiffs") complaint ("Complaint") for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For

the following reasons, the Court will grant both Defendants'

Motions to Dismiss Plaintiffs' Complaint.

---

[1] The Memorandum Opinion issued on February 1, 2010 [Dk. 27] included a typographical error regarding the closing date of Plaintiffs' property on page 1.  The Court clarifies that the correct date is "on or about July 11, 2005" and accordingly issues this Amended Memorandum Opinion reflecting the correct date on page 2.  Thus, the original Memorandum Opinion [Dk. 27] shall have no force or effect as it has been superseded by this Amended Memorandum Opinion. The Order [Dk. 28] regarding the Memorandum Opinion will still stand valid and effective as to the Amended Memorandum Opinion.

# I. Background

This case arises out of an application for and closing on residential home mortgage loans which took place on or about July 11, 2005 in connection with Plaintiffs' purchase of the property ("Property") located at North Berlin Pike, Lovettsville, Virginia. (Compl. ¶¶ 10-26.) Plaintiffs are the borrowers of the residential home mortgage loans ("Loans"), an 80% loan in the amount of $308,800 and a 20% loan in the amount of $77,200, and the owners of the Property. (Compl. ¶¶ 3, 12-13.) Defendant George Mason Mortgage is the originator of the Loans (Compl. ¶ 4) and Defendant Countrywide Home Loans ("Countrywide") is the alleged second holder of the Loans. (Compl. ¶ 5.) The Loans were allegedly transferred or assigned to Defendant Bank of America ("BOA") when BOA acquired Countrywide. (Compl. ¶ 6.) Defendant Litton Loan Servicing ("Litton") allegedly served as a loan servicer for the 20% loan when the Loans were acquired by Countrywide and BOA subsequently. (Compl. ¶ 7.) Defendant BGW is a professional company which was allegedly appointed as a substitute trustee for the foreclosure sale of the Property. (Compl. ¶ 8.) Plaintiffs also named John Does 1-50 whose names and capacities are unknown at this time. (Compl. ¶ 9.)

The Complaint contains the following eight causes of action against various Defendants: (1) violations of the Federal

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* and 12 C.F.R. § 226 ("Regulation Z") against George Mason Mortgage, Countrywide, and BOA; (2) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.,* and 24 C.F.R. § 3500 ("Regulation X") against Defendants George Mason Mortgage, Countrywide, BOA and Litton; (3) fraud in inducement and fraud in factum against Defendants George Mason Mortgage, Countrywide, and BOA; (4) breach of contract and implied covenant of good faith and fair dealing against Defendants George Mason Mortgage, Countrywide, and BOA; (5) negligent and fraudulent misrepresentation against Defendants George Mason Mortgage, Countrywide, and BOA; (6) common law civil conspiracy against Defendants George Mason Mortgage, Countrywide, BOA, and Litton; (7) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, against Defendant Litton; and (8) declaratory judgment and quiet title against Defendants BOA and "Trustee." (Compl. ¶¶ 27-81.)

Plaintiffs seek statutory damages, costs and reasonable attorney's fees, general damages in the sum of $401,791.73, actual damages to be established at trial, pre- and post-judgment interest, a judgment order declaring that Defendants are not holders in due course and are not entitled to enforce the Loans against Plaintiffs, a judgment order asking Defendants to identify the actual note holder of the Loans, a judgment order

restraining Defendants from taking any adverse action with respect to the Property, and any other relief the Court deems appropriate.  Plaintiffs also seek punitive damages in the sum of $1,205,375.10 and injunctive relief "prohibiting the Defendant[s] from any action which would result in Plaintiff[s] being ousted from the disputed Property."

The allegations in the Complaint are as follows: Plaintiffs are unsophisticated consumers with no ability to speak, read, or write in English.  (Compl. ¶ 10.)  In 2005, Plaintiffs met with Lidio Vasquez ("Vasquez"), a Spanish speaking real estate agent, to discuss their desire to purchase a home for their family.  (Compl. ¶ 10.)  In or around June 2005, Plaintiffs met with Vasquez and a female mortgage broker, whose identity is unknown to Plaintiffs at this time, at the offices of George Mason Mortgage.  (Compl. ¶ 11.)  At this meeting, Plaintiffs provided Vasquez and the mortgage broker requested documents to apply for a residential loan.  (Compl. ¶ 11.)  Using only Plaintiff Reyna Espejo's financial information, Plaintiffs were approved for the loan in the amount of $450,000 but decided to purchase the Property with a price of $386,000.  (Compl. ¶ 12.)

To pay for the Property, Plaintiffs obtained two Loans in the amount of $308,800 ("an 80% loan") and $77,200 ("a 20% loan") from George Mason Mortgage.  (Compl. ¶ 13.)  During this process, Plaintiffs repeatedly informed Vasquez and the mortgage

broker that they wanted the loans to be fixed for 30 years and
that their monthly payment should not exceed $1,600 in total.
(Compl. ¶ 14.)  Both Vasquez and the mortgage broker assured
Plaintiffs that these were components of the Loans.  (Compl. ¶
14.)  Plaintiffs, however, learned at the closing, which took
place in July 2005, their monthly mortgage payment was going to
exceed $2,000 and that the interest rate on the 80% loan was not
fixed.  (Compl. ¶ 16, Ex. D.)  Upon learning the mechanics of the
Loans, Plaintiffs tried to "walk away from the deal" but were
told that they would lose their deposit.  (Compl. ¶ 17.)  To
convince Plaintiffs to go through with the closing, Vasquez
offered to waive closing costs and offered $5,000 in cash.
(Compl. ¶ 18.)  Additionally, Vasquez and the mortgage broker
together told Plaintiffs that they would be able to refinance
before the interest rate escalated in the future.  (Compl. ¶ 18.)
Based on these promises made by Vasquez and the mortgage broker,
Plaintiffs closed the deal and settled on the purchase of the
Property.  (Compl. ¶ 19.)

        In August 2008, Plaintiffs began having difficulties
with meeting their mortgage payment obligations when their work
hours and income were reduced and the interest rate on their
mortgage payment went up sharply.  (Compl. ¶ 20.)  To avoid
defaulting on the Loans, Plaintiffs called Countrywide several
times asking for help but were told that "no help was available"

because "they were current on their payments." (Compl. ¶ 20.)
Instead, a representative from Countrywide suggested Plaintiffs
not make their mortgage payment for three months and then apply
for a modification. (Compl. ¶ 20.) Plaintiffs followed this
directive and submitted required documents to Countrywide
requesting a modification three months later. (Compl. ¶ 21.)

Two months after it received Plaintiffs' request for a
modification, Countrywide lowered Plaintiffs' interest rates but
only modestly. (Compl. ¶ 22.) In doing so, Countrywide added to
the principal the five months' worth of missed payments as well
as fees, interests and penalties. (Compl. ¶ 22.) Because of the
missed payments, Countrywide "made monthly negative entries" to
the credit bureau and BOA reduced Plaintiffs' available credit
card limits, thereby ruining Plaintiffs' credit. (Compl. ¶ 23.)

In or around May 2009, Plaintiffs hired counsel
regarding this matter and sent Qualified Written Requests ("QWR")
and dispute of debt letters to Defendants. (Compl. ¶ 24.)
Plaintiffs' counsel also contacted BOA to request a modification
but BOA was unwilling to accommodate the request. (Compl. ¶ 25.)
On or about September 9, 2009, BGW sent Plaintiffs a letter to
inform them that a foreclosure sale of the Property will be held
on October 22, 2009. (Compl. ¶ 26, Ex. F.) Plaintiffs were
unable to prevent the foreclosure sale. (Compl. ¶ 26.)

On or about October 21, 2009, Plaintiffs filed their

Complaint against Defendants George Mason Mortgage, Countrywide, BOA, Litton, BGW, and John Does 1 through 50 in the Circuit Court of Loudoun County, Virginia.  On November 17, 2009, Defendant Litton removed the case to the United States District Court for the Eastern District of Virginia.  On December 7, 2009, Defendant George Mason Mortgage moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On December 22, 2009, Defendant BGW also moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6).  Plaintiffs did not timely oppose these Motions.  The hearing regarding both Motions was scheduled to be held on January 8, 2010, but the Court terminated hearing and decided to rule on the motions on the basis of the briefs alone on January 7, 2010.

On January 7, 2010, Plaintiffs filed a Motion for Extension of Time to File a Response, which was granted by the Court.  Plaintiffs filed their opposition to both Defendant George Mason Mortgage and Defendant BGW's Motions to Dismiss on January 21, 2010.  On January 27, 2010, Defendant George Mason Mortgage filed its reply.  Defendants George Mason Mortgage and BGW's separate Motions to Dismiss pursuant to Rule 12(b)(6) are before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *See Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a
Rule 12(b)(6) motion to dismiss, the Court is first mindful of
the liberal pleading standards under Rule 8, which require only
"a short and plain statement of the claim showing that the
pleader is entitled to relief."  Fed. R. Civ. P. 8.  Thus, the
Court takes "the material allegations of the complaint" as
admitted and liberally construe the Complaint in favor of
Plaintiffs.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)
(citation omitted).

    While Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions" because "a formulaic recitation of the elements
of a cause of action will not do."  *Bell Atlantic Corp. v.
Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).
Indeed, the legal framework of the Complaint must be supported by
factual allegations that "raise a right to relief above the
speculative level."  *Id.* at 1965.

    In its recent decision, *Ashcroft v. Iqbal*, 129 S.Ct
1937 (2009), the Supreme Court expanded upon *Twombly* by
articulating the two-pronged analytical approach to be followed
in any Rule 12(b)(6) test.  First, a court must identify and
reject legal conclusions unsupported by factual allegations
because they are not entitled to the presumption of truth.  *Id.*
at 1951.  "[B]are assertions" that amount to nothing more than a

8

"formulaic recitation of the elements" do not suffice.  *Id.*
(citations omitted).  Second, assuming the veracity of "well-
pleaded factual allegations", a court must conduct a "context-
specific" analysis drawing on "its judicial experience and common
sense" and determine whether the factual allegations "plausibly
suggest an entitlement to relief."  *Id.* at 1950-51.

The plausibility standard requires more than a showing
of "a sheer possibility that a defendant has acted unlawfully".
*Id.* at 1949.  In other words, "[a] claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable for
the misconduct alleged."  *Id.* at 1949.

### III.  Analysis

A.  Defendant George Mason Mortgage's Motion to Dismiss

In Plaintiffs' Complaint, the following six counts are
specifically alleged against Defendant George Mason Mortgage:
Count I (Violations of TILA and Regulation Z), Count II
(Violations of RESPA), Count III (Fraud in inducement and Fraud
in Fact), Count IV (Breach of Contract and Implied Covenant of
Good Faith and Fair Dealing), Count V (Negligent and Fraudulent
Misrepresentation) and Count VI (Common Law Civil Conspiracy).
Counts VII and VIII do not seek relief against George Mason
Mortgage.  Defendant George Mason Mortgage moves to dismiss these
six counts on the basis that (1) most of Plaintiffs' claims are

barred by the applicable statutes of limitations and (2)
Plaintiffs have failed to properly plead a claim for which they
are entitled to relief sought. (Def. George Mason Mortgage's
Mem. in Supp. of Mot. to Dismiss ("Def. GMM's Mem.") 3-6.)

### 1. Count I (TILA) and Count II (RESPA)

As an initial matter, the Court acknowledges its
authority to grant a Motion to Dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6) on the basis of affirmative defense
in the limited circumstances "where the allegations of the
complaint give rise to an affirmative defense . . . if it clearly
appears on the face of the [C]omplaint." *Richmond, F. & P.R.R.
v. Frost*, 4 F.3d 244 (4th Cir. 1993) (citations omitted);
*Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334,
336 (4th Cir. 2009) (citing *Goodman v. Praxair, Inc.*, 494 F.3d
458, 464 (4th Cir. 2007). Additionally, the Court notes that it
will consider documents attached to the Complaint as part of the
pleading for Defendants' Motions to Dismiss. Fed. R. Civ. P. 10
(c) ("A copy of a written instrument that is an exhibit to a
pleading is a part of the pleading for all purposes.")

Based on the Complaint, it appears clearly that the
purchase of the Property took place some time in 2005. (Compl.
¶¶ 10-11.) Specifically, Exhibits C and D of the Complaint
identify July 11, 2005 as the closing date of the transaction at

10

issue.  (Compl., Exs. C, D.)  Thus, Defendant George Mason
Mortgage's affirmative defense of statute of limitations appear
on the face of the Complaint and attached exhibits.  (Compl. ¶¶
11, 16, 17, 30, Exs. C, D.)  Based on this fact, the Court finds
it appropriate to address this issue in the current posture of
the case.

Plaintiffs claim that the "irregularities on the face
of [the closing] documents," for example, in the Federal Truth-
in-Lending Disclosure Statement ("TILDS"), and confusing and
contradicting disclosures regarding the contractual terms of the
Loans constitute violations of TILA and Regulation Z.  (Compl.
¶¶ 29-32.)  Further, Plaintiffs allege that Defendants violated
RESPA by not disclosing "certain charges for the rendering of
real estate settlement services which were" charges for services
other than those actually performed.  (Compl. ¶ 35.)  Plaintiffs
contend that Defendants further violated RESPA by employing
"underwriting standards that disregarded Plaintiffs' actual
financial circumstances" such as falsification of Plaintiffs'
income.  (Compl. ¶ 37.)

Defendant George Mason Mortgage submits that both Count
I and Count II must be dismissed because they are time-barred by
the applicable statutes of limitations.  (Def. GMM's Mem. 3.)  In
response, Plaintiffs argue, invoking the "discovery rule," that
Defendant's statute of limitations argument should not stand

because the Complaint does not show when Plaintiffs knew or should have known of the injury they have suffered throughout the exercise of reasonable diligence. (Pl.'s Opp. 2.) (citing *Board of Trustees v. D'Elia Erectors, Inc.*, 17 F.Supp.2d 511, 514 (E.D. Va. 1998)). The Court finds this argument unconvincing. Plaintiffs specifically allege that they realized they had been misled, thus knew of the violations, but proceeded with the closing. (Compl. ¶¶ 16-19.) Plaintiffs also admit in their brief in opposition that Defendant George Mason Mortgage stated the misrepresentations "at or before the closing for the purchase of Plaintiffs' home." (Pls.' Opp. 4.)

TILA imposes a one year statute of limitations on private actions for damages. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation.) A TILA violation occurs when the transaction is consummated which is generally the day the loan agreement is entered into. *See Davis v. Edgemere Finance Co.*, 523 F.Supp. 1121, 1123 (D. Md. 1981). As noted above, the closing of the Property took place on or about July 11, 2005 (Compl. Exs. C, D) and Plaintiffs did not file their Complaint until October 21, 2009 even though they realized that the violations had occurred at or before the closing. Thus, it appears that Plaintiffs' claim is barred by TILA's one year

statute of limitations period based on the facts as alleged in the Complaint.  Plaintiffs however raise the argument that it should receive "the benefit of exceptions to the statute of limitations such as equitable tolling or estoppel."  (Pls.' Opp. 3.)

Equitable estoppel only applies where "the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline."  *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987.)  Though there is no controlling circuit precedent regarding whether TILA is subject to the doctrine of equitable tolling when Plaintiff alleges fraudulent concealment, other federal courts have held that the statute of limitations period in TILA was subject to equitable tolling. *See, e.g., Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (internal citation omitted); *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 501-03 (3d. Cir. 1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984); *King v. California*, 784 F.2d 910, 914-15 (9th Cir. 1986); *Barnes v. West, Inc.*, 243 F.Supp.2d 559, 561-62 (E.D. Va. 2003) (internal citations omitted); *cf. Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1039-40 (D.C. Cir. 1986) (holding in dicta that TILA was not subject to equitable tolling).

In the Fourth Circuit, to invoke the doctrine of fraudulent concealment as a basis for equitable tolling,

13

Plaintiffs must show the following elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the [P]laintiff's claim, and (2) the [P]laintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Diaries, Inc.,* 71 F.3d 119, 122 (4th Cir. 1995). In order to satisfy the first element of this test, Plaintiffs must present evidence of affirmative "acts of concealment [by Defendants]." *Id.* at 125 (internal citation omitted).

Even if the Court were to assume that Plaintiffs' TILA claim was subject to the doctrine of equitable tolling, which this Court does not reach at this time, the Court finds that Plaintiff failed to allege sufficient facts to receive the benefit of equitable estoppel or tolling. In their Complaint, Plaintiffs failed to demonstrate any facts upon which this Court can conclude that there was any affirmative act of fraudulent concealment committed by the moving Defendant. In fact, the Complaint does not even make it clear which Defendant violated which sections of TILA and how. There is no evidence of Defendant George Mason Mortgage's specific and affirmative action that could form the basis of Plaintiffs' argument for equitable tolling or estoppel. Based on these facts, the Court will dismiss Count I of the Complaint.

RESPA's statute of limitations provisions vary depending on which sections of RESPA are alleged to have been violated. 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, 2608 of this title may be brought . . . within 3 years in the case of a violation of section 2605 . . . and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation"). Though Plaintiffs do not specify or cite to exactly what provisions of the United States Code have been violated, the Court concludes that Plaintiffs' RESPA claim is nonetheless barred by the applicable statute of limitations because the alleged violations leading up to the loan settlement occurred more than four years before Plaintiffs filed their Complaint.

The D.C. Circuit held in *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040-41 (D.C. Cir. 1986), that the statute of limitations imposed by RESPA was a jurisdictional prerequisite, thus was not subject to equitable tolling. Moreover, relying on *Hardin,* the Fourth Circuit held in an unpublished opinion that the equitable tolling doctrine was not applicable to RESPA. *Zaremski v. Keystone Title Assoc., Inc.,* 884 F.2d 1391, at *2 (4th Cir. 1989). On the other hand, other federal courts have held that the statute of limitations imposed by RESPA was subject to equitable tolling. *See, e.g.*, *Lawyers Title Ins. Corp. v.*

15

*Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir. 1997);

*Carr v. Home Tech Co.*, Inc., 476 F.Supp.2d 859, 868-69 (W.D.

Tenn. 2007); *Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311,

328 (M.D.N.C. 2002); *Kerby v. Mortgage Funding Corp.*, 992 F.Supp.

787, 797 (D. Md. 1998).

Again, the Court notes that it does not need to decide whether the statute of limitations period in RESPA was subject to equitable tolling in this case because Plaintiffs did not adequately allege the prerequisites to receive the benefit of equitable tolling or estoppel. The Complaint is devoid of any evidence based on which this Court can conclude that there were affirmative acts of fraudulent concealment by Defendant George Mason Mortgage. For these reasons, the Court will dismiss Count I and II of the Complaint against Defendant George Mason Mortgage.

### 2. Count III (Fraud), Count V (Negligent and Fraudulent Misrepresentation) and Count VI (Common Law Civil Conspiracy)

Defendant George Mason Mortgage similarly moves the Court to dismiss Count III (Fraud in Inducement) and Count V (Negligent and Fraudulent Misrepresentation) of the Complaint based on the fact that these claims are barred by the applicable statutes of limitations. (Def. GMM's Mem. 3-4.) Moreover, Defendant George Mason Mortgage moves to dismiss Count VI on the basis that it is insufficiently pled. (Def. GMM's Mem. 5-6.)

16

Even though the Complaint lacks sufficient facts for the Court to ascertain the specific nature of these claims, the Court notes that both Counts III and V appear to be actions in fraud based on the following allegations: Defendant George Mason Mortgage, in concert with other Defendants, made fraudulent representations and withheld necessary and required information from Plaintiffs to induce Plaintiffs to enter into the mortgage contracts at issue.

Accordingly, the Court finds the two-year statute of limitations period under Virginia Code Ann. § 8.01-243(A) applies to Count III (fraud) and Count V (Negligent and Fraudulent Misrepresentation[2]). *See* Va. Code Ann. § 8.01-243(A) ("Every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues.") Plaintiffs' claim of Count VI, common law civil conspiracy, is likewise subject to the same two-year period as actions in fraud. *See, e.g.*, *Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19, 29 (Warren County, 1994) (noting that statute of limitations for conspiracy claim is determined based on an examination of the underlying cause of action). For fraud, the statute of limitations begins to run from the time that Plaintiffs

---

[2] The Court notes that there does not exist a separate cause of action for negligent misrepresentation in Virginia, *see Bay Point Condo. Assoc. v. RML Corp.*, 52 Va. Cir. 432, 443 (City of Norfolk, 2000), thus will only consider Plaintiffs' claim for fraudulent misrepresentation in Count V.

discovered or should have discovered the fraud in the exercise of
due diligence. *See* Va. Code Ann. §8.01-249(1).

In the case at bar, the Complaint shows that all
Plaintiffs' claims arise out of the allegedly fraudulent and
misleading statements made to Plaintiffs by various Defendants
leading up to and during the closing on the mortgage. (Compl. ¶¶
42-46, 54-57, 60-66.) The Complaint also shows that Plaintiffs
knew or found out that "they had been misled" at the closing on
or about July 11, 2005. (Compl. ¶ 16.) Thus, the Court finds
that the applicable statutes of limitations for Counts III, V, VI
started to run on, at the latest, the day of settlement, more
than four years before Plaintiffs brought this suit and had
expired before they filed the Complaint. Accordingly, the
applicable statutes of limitations on Counts III, V, and VI bar
Plaintiffs' claims against Defendant George Mason Mortgage unless
Plaintiffs can demonstrate that they are entitled to the benefit
of equitable estoppel or tolling. Because Plaintiffs failed to
specifically plead affirmative acts of by Defendant George Mason
Mortgage to conceal material facts, but rather alleged that they
discovered that they had been "misled" (Compl. ¶ 16) before the
closing, the Court will dismiss Counts III, V, and VI alleged
against Defendant George Mason Mortgage. *See Supra* III(A)(I).

### 3. Count IV (Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing)

Plaintiffs allege that Defendant George Mason Mortgage

18

breached an "implied covenant of good faith and fair dealing"
(Compl. ¶ 48) "when [it] intentionally placed materially false
and inaccurate information in disclosure documents" prior to and
during the settlement. (Compl. ¶ 50.) Defendant George Mason
Mortgage submits that Plaintiffs' claim for breach of the implied
covenant of good faith and fair dealing should be dismissed
because this cause of action is "not found in Virginia common
law." (Def. GMM's Mem. 5.)

Under Virginia law, "every contract *contains* an implied
covenant of good faith and fair dealing in the performance of the
agreement." *Pennsylvania Life Insurance Co. v. Bumbrey*, 665
F.Supp 1190, 1195 (E.D. Va. 1987) (citing *McMullen v. Entre
Computer Center*, Inc., 819 F.2d 1279, 1284 (4th Cir. 1987))
(emphasis added); *see also A & E Supply Co. v. Nationwide Mut.
Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986). Thus, the
Court finds it unnecessary to consider Plaintiffs' claim of
breach of an implied covenant of good faith and fair dealing
separately from Plaintiffs' claim for breach of contract. *See
Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254
Va. 379, 385 (1997) (noting that when parties to a contract
create valid and binding rights, an implied covenant of good
faith and fair dealing is inapplicable to those rights); *L & E
Corp. v. Days Inns of Am., Inc.,* 992 F.2d 55, 59 (4th Cir. 1993)
(holding that Virginia does not recognize an independent claim

for breach of an implied covenant of good faith and fair dealing).

The Court's review of Count IV reveals that it is devoid of allegations regarding any breach of contract by Defendant George Mason Mortgage. Nothing in the Complaint suggests that Defendant George Mason Mortgage has failed to perform something that it was bound to do under the agreed terms or obligations of the Loans. For these reasons, the Court will dismiss Count IV of the Complaint against Defendant George Mason Mortgage.

## B. Defendant BGW's Motion to Dismiss

In the Complaint, Plaintiffs allege that Defendant BGW "was appointed as substitute trustee for the foreclosure sale . . . of the Property." (Compl. ¶ 8.) Defendant BGW moves to dismiss Plaintiffs' Complaint on the basis that it is not "a substitute trustee under the Plaintiffs' deed of trust" and it has "never acted as a substitute trustee for this deed of trust" at issue. (Def. BGW's Mem. in Supp. of Mot. to Dismiss ("Def. BGW's Mem.") 2.) In fact, BGW submits that it is a law firm working for the actual substitute trustee for the deed, Equity Trustees, LLC. (Def. BGW's Mem. 2.) Defendant BGW attached the Deed of Appointment of Substitute Trustee as an exhibit to its memorandum in support of this fact. (Def. BGW's Mem., Ex. 1.) Plaintiffs do not oppose the dismissal of the Complaint against

BGW but requests the dismissal be without prejudice because they may have a claim against BGW other than those based upon its status as a substitute trustee.  (Pl.'s Opp. to BGW's Mot. to Dismiss 1.)

Accordingly, based on its review of the Deed of Appointment, the Court holds that Defendant BGW is not an appropriate party to this action insofar as Plaintiffs' claims are based on its alleged status as a substitute trustee and will dismiss all claims against Defendant BGW without prejudice.

## IV.  Conclusion

For the foregoing reasons, the Court will grant both Defendants George Mason Mortgage and BGW's Motions to Dismiss without prejudice.

An appropriate Order will issue.


February 2, 2010                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                               UNITED STATES DISTRICT COURT JUDGE